IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Case No.:  1:21-MJ-27 (JUDGE ALOI) |
| vs. | Charging District's Case No: 1:21-MJ-286 (Complaint) 1:21-CR-222 (Indictment) |
| GEORGE PIERRE TANIOS, | |
| Defendant. | |

**DETENTION ORDER**

On March 22, 2021, came the United States of America by Sarah E. Wagner, Assistant United States Attorney, and came Defendant, George Pierre Tanios, who appeared by in person and by his counsel, Elizabeth B. Gross and L. Richard Walker, for a Rule 5(c)(3) hearing on an Indictment and for a hearing on the Government's Motion for Pretrial Detention [ECF No. 2] and Amended Motion for Pretrial Detention [ECF No. 17], in accordance with the Bail Reform Act, Title 18, United States Code, Section 3142(f). The Court also is in receipt of Defendant's response to the Government's motion, filed on March 19, 2021. [ECF No. 22].

The Court gave notice to the Government's counsel that, pursuant to the Due Process Protections Act of 2020, the Court reminds the Government's attorneys that under Brady v. Maryland, 373 U.S. 83 (1963) and its progeny, failing to disclose favorable evidence to the accused violates due process where the evidence is material either to guilt or punishment. Further, consequences for a Brady violation can include, but are not necessarily limited to, a vacated conviction and disciplinary actions against the prosecutor. The Court gave written notice of the same by filing notice on the Court's CM/ECF system. [ECF No. 27].

The parties presented evidence and witness testimony was taken.

1

**A. The Standards**

Title 18, United States Code, § 3142(g) provides the specific factors that are to be considered to determine whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community. Those factors are:

1. The nature and consequences of the offense charged, including whether the offense is a crime of violence, a violation of Section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

2. The weight of the evidence against the person;

3. The history and characteristics of the person, including but not limited to community ties, employment, criminal history, record of court appearance or whether the person was on probation or parole at the time the current offense was committed; and

4. The seriousness of the danger to any person or the community that would be posed by the person's release.

**B. Findings of Fact and Conclusions of Law**

Defendant first appeared in this Court on this matter on March 15, 2021 pursuant to a Criminal Complaint originating in the United States District Court for the District of Columbia.

*1. Charges Against Defendant, Rule 5(c)(3), and Preliminary Hearing*

In the Criminal Complaint, bearing the charging district's case number 1:21-MJ-286, Defendant was charged with the following violations: Assault on Federal Officer with Dangerous Weapon (3 counts), in violation of Title 18, United States Code, Sections 111(a) and (b); Conspiracy to Injure and Officer, in violation of Title 18, United States Code, Section 372; Civil Disorder, in violation of Title 18, United States Code, Section 231(a)(3); Obstructing or Impeding

Any Official Proceeding, in violation of Title 18, United States Code, Section 1512(c)(2); Physical Violence on Restricted Grounds, While Carrying Dangerous Weapon, and Resulting in Significant Bodily Injury, in violation of Title 18, United States Code, Sections 1752(a)(1), (2), (4), (b)(1)(A) and (b)(1)(B); Violent Entry and Disorderly Conduct, Act of Physical Violence on Capitol Grounds, in violation of Title 40, United States Code, Section 5104(e)(2)(f); and Aiding and Abetting, in violation of Title 18, United States Code, Section 2.

On March 15, 2021, the Court conducted Rule 5(c)(3) proceedings and scheduled the matter for preliminary hearing and detention hearing for March 18, 2021. In the meantime, Defendant filed a motion to continue proceedings [ECF No. 13], which the Court granted [ECF No. 14], rescheduling proceedings to March 22, 2021.

Then, on March 17, 2021, a Grand Jury sitting in the District of Columbia returned an Indictment against Defendant and co-Defendant, Julian Elie Khater ("Khater"). [ECF No. 19]. This matter bears the charging district's case number 1:21-CR-222. In so doing, the Grand Jury charged Defendant with the following: Conspiracy to Impeded or Injure an Officer, in violation of Title 18, United States Code, Section 372; Assault on a Federal Officer with a Dangerous Weapon and Aiding and Abetting (three counts), in violation of Title 18, United States Code, Sections 111(a)(1), (b), and 2; Civil Disorder, in violation of Title 18, United States Code, Section 231(a)(3); Obstruction of an Official Proceeding, in violation of Title 18, United States Code, Section 1512(c)(2); Entering and Remaining in a Restricted Building or Grounds with a Deadly or Dangerous Weapon and Causing Significant Bodily Injury, in violation of Title 18, United States Code, Sections 1752(a)(1), (b)(1)(A), and (b)(1)(B); Disorderly and Disruptive Conduct in a Restricted Building or Grounds with a Deadly or Dangerous Weapon and Causing Significant Bodily Injury, in violation of Title 18, United States Code, Sections 1751(a)(2), (b)(1)(A), and


(b)(1)(B); Engaging in Physical Violence in a Restricted Building or Grounds with a Deadly or Dangerous Weapon and Causing Significant Bodily Injury, in violation of Title 18, United States Code, Sections 1751(a)(4), (b)(1)(A), (b)(1)(B); and Act of Physical Violence in the Capitol Grounds or Building, in violation of Title 40, United States Code, 5104(e)(2)(F).

As a preliminary matter, during proceedings on March 22, 2021, the undersigned conducted a Rule 5(c)(3) proceeding on the Indictment. The undersigned reviewed with Defendant the charges in the Indictment, and informed Defendant of his right to retain counsel or request that counsel be appointed to him, his right to an identity hearing, his right to production of the warrant or a copy thereof, and of his right to a hearing on detention. An identity hearing was not requested. Further, the undersigned discussed with counsel whether there was a need to conduct a preliminary hearing, now that an Indictment had been returned against Defendant. Both counsel for the Government and Defendant agreed that there was no longer a need to conduct a preliminary hearing.

*2. Detention Hearing: Admission of Exhibits, and Proceeding by Government's Proffer*

The Court proceeded with a detention hearing. The Government moved to admit Exhibit Nos. 1—15, to which Defendant did not object. The Court granted the Government's motion and admitted these exhibits into evidence. [ECF No. 25].

Additionally, the Government requested to give a proffer of the evidence against Defendant on the matter of detention, rather than present witness testimony. Defendant objected to this approach, and instead insisted that the Government present witness testimony. After a recess during which Defendant's counsel, the Government, and the undersigned further researched and reviewed the issue, the Court overruled Defendant's objection and allowed the Government to proceed by proffer. While Title 18, United States Code, Section 3142 sets forth the process for

reviewing the Government's motion to detain, it does not specify whether the Government must proceed by witness testimony or when it may choose to proceed by proffer. In support of his insistence that the Government should be required to put on witness testimony, Defendant cited to United States v. Hammond, 44 F. Supp. 2d 743 (D. Md. 1999). However, based upon the undersigned's review of the issue, nothing about the statute governing the process requires the Government to put on witness testimony instead of a proffer. Moreover, the weight of interpretive caselaw is that the Government is within its rights to proceed by proffer instead of witness testimony, with the presiding judicial officer's assent. See e.g. United States v. Winsor, 785 F.2d 755 (9th Cir. 1986); United States v. Gaviria, 828 F.2d 667 (11th Cir. 1987); United States v. Emanuel, 869 F.2d 795 (4th Cir. 1989) (evaluating the question in the context of sentencing); United States v. Smith, 79 F.3d 1208 (D.C. Cir. 1996); United States v. Karni, 298 F. Supp.2d 129 (D.D.C. 2004).

In the instant case, the undersigned noted that Defendant's arguments speak to the weight of the Government's evidence, not its admissibility. The undersigned reminded counsel that this proceeding was a bench proceeding, with the Court mindful that it will afford the proper weight to any proffer or testimony which the Court deems appropriate. Accordingly, the Court allowed the Government to proceed by proffer.

*3. Government's Proffer*

The Government proffered that on January 6, 2021, in Washington, D.C., Defendant and Khater were at a rally-turned-riot at the United States Capitol. The riot was an attempt to thwart certification of the presidential election by the United States Congress.

More specifically, the Government proffered that Defendant and Khater made plans to meet and travel together to Washington, D.C. According to the Government, shortly before

January 6, 2021, Defendant entered a firearms store in Morgantown, West Virginia while talking with Khater on his mobile phone to determine what to purchase to take to Washington, D.C. Defendant inquired of an employee at the store whether he could take a firearm to Washington, D.C., and when told that he could not, asked whether he could take a pepper ball gun, which the employee also told him he could not do. Defendant then asked whether he could take mace to Washington, D.C., and then purchased two cans of Frontiersman bear spray and two smaller canisters of pepper spray on keychains. The Government proffered that the employee provided to agents a receipt which appears to correspond to Defendant's purchase, and that Khater's phone records show a call between Defendant and Khater corresponding to the date and time on the receipt.

  The Government also proffered that Khater, a New Jersey resident, gave a statement that he drove to Morgantown to pick up Defendant to travel together to Washington, D.C., arriving there late on January 5, 2021 or early January 6, 2021. Khater stated that they shared lodging that night, and then took a Lyft rideshare together to the rally the next morning. Khater stated that Defendant procured bear spray and that they knew it was not for use on human beings. During their time together on January 6, according to Khater, Defendant carried a backpack which the two were sharing and which contained sprays.

  Aside from Khater's statement, the Government put together its version of events based on surveillance footage, officers' bodycam footage, and open source media. According to the Government, at approximately 1:00 p.m. that day, the riotous crowd at the United States Capitol was facing a barrier of bicycle racks at the exterior of the Capitol, with police officers behind the barrier. Among the rioters were Defendant and Khater. The Government proffered that Defendant and Khater were working in concert to spray chemical substances in officers' faces, while the

crowd was attempting to breach the barrier. Video footage shows Khater conversing with each other throughout their time at the Capitol. At one point, video shows Khater telling Defendant to "Give me that bear s*it" while reaching into the shared backpack carried by Defendant. The video further shows Defendant telling Khater "Hold on, hold on, not yet, not yet … it's still early."

Per the Government's proffer, Khater ultimately sprayed U.S. Capitol Police Officers B. Sicknick and C. Edwards, as well as Metropolitan Police Department Officer D. Chapman with an unknown substance, all of which is clearly documented on video footage. The officers retreated from the line at the barricade, temporarily blinded and unable to perform their duties. Officer Edwards sustained lasting injuries beneath her eyes and suffered scabbing for several weeks thereafter. Both Officer Edwards and Officer Chapman described the spray as being as strong, perhaps stronger, than any spray to which they had been exposed in law enforcement training.

According to the Government, Defendant and Khater then drove back together to Morgantown, West Virginia. Law enforcement identified Defendant and Khater based on the above-noted surveillance footage, officers' bodycam footage, and open source media, as well as information gleaned from tipsters and social media. In a search of Khater's residence, the Government proffered, agents located in his bedroom the hat and gloves which he is seen wearing in videos from January 6; elsewhere in the residence, agents found the jacket which he is seen wearing in those videos, as well as a spent can of bear spray.

In a search of Defendant's residence, per the Government's proffer, agents located the backpack which Defendant can be seen carrying in videos from January 6. In the backpack, agents found a jacket and hat which appear to be the same which Defendant can be seen wearing in these videos. Agents also found in the backpack two cans of bear spray, spray on a keychain, and a handgun.

*4. Defendant's Witnesses*

Defendant called six witnesses: (1) Maguy Tanios, his mother, (2) Amanda Plumley, his fiancé and mother of his three children, (3) Shadoe Lowers, a family friend and former employee, (4) Michela Scotto Diluzio, a friend and collaborator in the local restaurant business, (5) Maria Boutros, his sister, and (6) Special Agent Riley Palmertree of the FBI.

Defendants first five witnesses testified as to his work ethic, longstanding position in the Morgantown restaurant industry, and role as a supportive father to his children. SA Palmertree testified as to how law enforcement conducted its investigation to piece together the Government's allegations as set forth in the Government's proffer.

### C.  Decision

Upon consideration, the Court finds that Defendant is <u>not</u> a flight risk. However, the Court also finds that the Defendant poses a danger to others and the community.

For the reasons set forth herein and, on the record, the Court finds as follows:

1. The Government has <u>not</u> established, by a preponderance of the evidence, that Defendant is a flight risk.

2. The Government has established, by clear and convincing evidence, that Defendant is a danger to others and the community for the reasons set forth in the findings of fact above, and in short, because of:

    a. Defendant's premeditation of violence, which included the advance purchase of dangerous chemical sprays and Defendant's questioning of a firearms store employee as to whether he could take a firearm or a pepper ball gun into Washington, D.C.;

8

      b. Defendant's telephone conversation with Khater during his time in the firearms store to determine what to purchase for the trip to Washington, D.C.;

      c. Defendant's carrying of a backpack, shared with Khater, at the event, containing chemical sprays, and Khater attempting to access the backpack by saying "Give me that bear s*it" and Defendant responding, "Hold on, hold on, not yet, not yet … it's still early"; and

      d. The spraying of chemical substances directly into the faces of three police officers, who were in the line of duty and facing a mob.

3. The Court has carefully considered Defendant's response [ECF No. 22] to the Government's Amended Motion for Pre-Trial Detention, as well as Defendant's minimal criminal history, his connections to the community, his employment, and his family support, as indicated by the witnesses he called. However, these factors do not outweigh the danger which Defendant poses to the community as set forth herein. Thus, the Court concludes that no bond conditions could be set to reasonably ensure the safety of others and the community.

Based upon the evidence presented and the above findings of fact and conclusions of law, the Government's Amended Motion for Pre-Trial Detention [ECF No. 17] is **GRANTED.** Accordingly, it is hereby **ORDERED** that:

1. Defendant is hereby **REMANDED** to the custody of the United States Marshals Service pending further proceedings in this case;

2. Defendant be confined in a facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

3. Defendant shall be afforded a reasonable opportunity for private consultation with defense counsel;

4. On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which Defendant is confined shall deliver the defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding; and

5. Any Party seeking revocation or amendment of this Order shall file a motion pursuant to 18 U.S.C. §3145.

The Clerk of the Court is directed to provide a copy of this Order to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

**DATED: March 23, 2021.**

MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE